# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**HAROLD J. SCOTT**,

               Plaintiff,

      - v -
                                    Civ. No. 9:13-CV-0605
                                    (TJM/RFT)

**PETER FREDERICK**, *Senior Counsel / Hearing Officer Clinton Correctional Facility*, **CAPTAIN J. FACTEAU**, *Correctional Captain, Clinton Correctional Facility*, **MRS. EDNA AIKEN**, *Correction Counsel / Tier Assistant, Clinton Correctional Facility*, **RANDY NICHOLS**, *Correction Officer, Clinton Correctional Facility*, **ALBERT PRACK**, *Appeals Review Official, Department of Correctional Services and Community Supervision*,

               Defendants.

**APPEARANCES:**
                                     **OF COUNSEL:**

**HAROLD J. SCOTT**
Plaintiff, *Pro Se*
84-A-4541
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

**HON. ERIC T. SCHNEIDERMAN**
                                      **COLLEEN D. GALLIGAN, ESQ.**
Attorney General of the State of New York
                                      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Harold J. Scott brings this action, pursuant to 42 U.S.C. § 1983, alleging that

Defendants violated his due process rights in connection with a Tier III Superintendent's Hearing

held at Clinton Correctional Facility ("CCF"). *See generally* Dkt. No. 1, Compl. Defendants move to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff fails to state a claim for which relief can be granted and that they are entitled to qualified immunity. *See generally* Dkt. No. 15-1, Defs.' Mem. of Law. Plaintiff opposes the Motion. Dkt. No. 19, Pl.'s Mem. of Law. For the reasons stated below, we recommend that the Defendants' Motion be **GRANTED** in part and **DENIED** in part.

## I. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing Fed. R. Civ. P. 10(c)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.

2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id*.

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Scherm3erhorn*, 373 U.S. 746, 754 n.6 (1963); *see also Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S.

at 555).  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal,* 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

## II. DISCUSSION

### A. Background

The following summary is taken from Plaintiff's Complaint.[1]

On May 5, 2010, while at CCF, Plaintiff was ordered to submit a urine specimen for drug testing.  Compl. at ¶ 6-1.  Two days later, on May 7, Defendant Randy Nichols, a Corrections Officer at Clinton Annex, tested Plaintiff's urine using a SYVA VIVA-JR Emit drug test.  Plaintiff's urine twice tested positive for opiates.  *Id.* at ¶ 6-3.  Defendant Nichols verified with CCF's main clinic that none of Plaintiff's medications could issue a false urine result.  *Id.* at ¶ 6-4.  Defendant Nichols issued a Misbehavior Report and had Plaintiff confined to keeplock status.  *Id.* at ¶ 6-6.

---

[1] In their Memorandum of Law, Defendants state that "Plaintiff quotes extensively from segments of the Tier hearing record and had clearly relied upon that record in the course of drafting the Complaint."  Dkt. No. 15-1, Defs.' Mem. of Law, at p. 4 n.2.  They argue, therefore, that documents they submit in support of their Motion should be deemed to be part of Plaintiff's Complaint and considered for purposes of the instant Motion.  *Id.*  Plaintiff counters that any references in his Complaint were made from his own personal handwritten notes and not the documents Defendants offer and, moreover, Defendants failed to provide the Court with a full record.  Dkt. No. 19, Pl.'s Mem. of Law, at pp. 2–4.  Given Plaintiff's objections, we decline Defendants' invitation.  Accordingly, we do not consider the documents offered by Defendants for purposes of deciding the instant Motion.  *See Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (citing *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989), for the proposition that "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").

On May 8, 2010, Plaintiff was served with a copy of the Misbehavior Report, however, it lacked a copy of Appendix C to Directive 4937.[2] *Id.* at ¶ 6-7. On May 12, Defendant Edna Aiken, who was appointed to act as Plaintiff's employee-assistant, met with Plaintiff. *Id.* at ¶ 6-11. Plaintiff requested that Defendant Aiken produce the following documents:

> (a) a copy of the DOCS Leasing Contract for the urinalysis machine currently in use; (b) a copy of the operator's Manual for the urinalysis machine currently in use; (c) the name, make, model number and year of manufacture of the urinalysis machine currently in use; (d) a copy of all maintenance log entries for the urinalysis machine, including, a copy of all scheduled maintenance program(s); (e) a copy of the EMIT OPIATE ASSAY insert instructions, labeling detailing the instructions to be used in conducting the testing which lists limitations etc.; (f) a copy of all sections of the Operator's manual concerning or relating to the effects of operator's error(s) or false results; (g) a copy of the most recent Emit Cross-Activity List for opiates; (h) a copy of all freezer log entries regarding [his] urine; (i) a copy of the procedures for forwarding urine specimens recommended by Clinton Annex; (j) a copy of officer NICHOLS certificate stating he was trained to conduct the testing; and (k) any and all information regarding faulty testing in using the machine.

*Id.* at ¶ 6-12.

Defendant Aiken left and returned with "a copy of the DOCS computer entry stating that Officer Nichols[] had passed training on the SYVA/ETS System on September 23, 2008, and a copy of Directive No. 4937." *Id.* at ¶ 6-13. Defendant Aiken did not provide Plaintiff with any other requested document, but informed him that "her secretary was 'gathering the remaining documents on the list' and she would put them in the hearing officer's package to be given to him at the

---

[2] In his Complaint, Plaintiff references a New York State Regulation that requires that certain documentation be attached to a misbehavior report. Compl. at ¶ 6-9 (referencing N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.4(e)(1)(iv), which deals with the requisite paperwork that must accompany a misbehavior report issued to an inmate who refuses to submit a urine sample). Although Plaintiff does not cite to the correct section of the pertinent Regulation, the Court takes judicial notice that pursuant to New York State Regulation, when a positive result is obtained from a urine specimen a misbehavior report shall be issued and

> shall be accompanied by the request for urinalysis test form, the inmate's test report from the laboratory or facility, a copy of the methods and procedures used by the testing laboratory or facility, and a statement of the scientific principles and validity of the testing apparatus used by the laboratory or facility.

N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.4(f)(2)(iii).

hearing." *Id.* at ¶¶ 6-14 & 6-15.

On May 13, 2010, Defendant Peter Frederick, a senior counselor at CCF, commenced a Tier III Superintendent's Hearing. *Id.* at ¶ 6-19. Plaintiff pled not guilty to drug use, objected to the fact that he had not received certain documents as promised, and pointed out that Defendant Aiken claimed she would place certain documents in the Hearing package. *Id.* at ¶¶ 6-20 & 6-21. Upon reviewing the Hearing package, Defendant Frederick found a "Certificate of Training for Officer RANDY E. NICHOLS[,] dated September 23-24, 2008, on a[n] EMIT VIVA-JR SYSTEM, a maintenance record from Siemen's Healthcare Diagnostics[,] dated April 15, 2010, regarding repairs[,] and daily and weekly maintenance records, but nothing else." *Id.* at ¶ 6-23. Defendant Frederick did not provide copies of these documents to Plaintiff. *Id.* at ¶ 6-24. Defendant Frederick determined that the other documents Plaintiff requested were irrelevant and denied their production or introduction at the Hearing. *Id.* at ¶ 6-25.

At some point, Defendant Frederick made an off-the-record phone call to an unidentified "senior urine testing officer" at Clinton Annex, who, according to Defendant Frederick, stated that "Officer NICHOLS[] was 'properly trained' and that the urinalysis machine was 'reliable.'" *Id.* at ¶¶ 6-31 & 6-32. Defendant Frederick neither recorded this telephone conversation nor noted the officer as a witness on the Hearing record sheet. *Id.* at ¶ 6-33. Instead, Defendant Frederick noted on the record that "he telephoned a more experienced officer at the annex and that the officer 'testified' that officer NICHOLS was properly trained and that the machine was 'reliable.'" *Id.* at ¶ 6-34. Plaintiff then stated that he intended to call the SYVA Company as a witness to "dispute the Certificate of training and manufacturing of the analyzer[;]" the Hearing was then adjourned. *Id.* at ¶ 6-37.

On May 17, 2010, the Hearing reconvened and Defendant Frederick provided Plaintiff with a copy of the CCF-main security urine log entries, but noted that the EMIT OPIATE ASSAY instruction sheet was irrelevant. *Id.* at ¶ 6-38. Plaintiff reinstated a previous objection regarding Defendant Frederick acting as both the hearing officer and his employee-assistant. *Id.* at ¶ 6-39. Defendant Frederick responded that "as long as he can go looking for the information, he can do both. [I]ts [his] prerogative to find out the information [he] need[s]; its [his] choice." *Id.* at ¶ 6-40. Plaintiff objected to not being able to question the officer who had given off-the-record testimony as to the reliability of the urinalysis machine, to which Defendant Frederick remarked that, "it was established that the machine is reliable." *Id.* at ¶¶ 6-41 through 6-44. Plaintiff then asked about the formal procedure recommended by Clinton Annex for forwarding his urine specimen, and the Hearing was adjourned so that the testing officer could be called as a witness. *Id.* at ¶¶ 6-45 & 6-46.

On May 25, 2010, the Hearing was reconvened and Defendant Nichols testified over the phone. *Id.* at ¶ 6-47. Plaintiff sought to ask Defendant Nichols a series of questions regarding his training, at least some of which were designed to "expose weaknesses in his testing ability." *Id.* at ¶¶ 6-49 through 6-53. Defendant Frederick refused to allow Plaintiff to ask several questions on "relevancy grounds claiming that it was not necessary to answer 'because neither you nor I can understand the technical stuff, we don't have the skill and training to understand those things; what matters is that the machine is <u>reliable</u> and <u>was</u> working properly.'" *Id.* at ¶ 6-54 (emphasis in original).

In the middle of questioning Defendant Nichols, the tape recorder shut-off. *Id.* at ¶ 6-57. Defendant Frederick turned the cassette tape over and started recording over previously recorded testimony and objections, and then adjourned the Hearing for disposition. *Id.* at ¶ 6-59. Upon

realizing this technical snafu, Defendant Frederick sought Plaintiff's permission to begin the Hearing anew, but Plaintiff refused to consent. *Id*. at ¶¶ 6-60 through 6-62. Defendant Frederick then claimed that Defendant Captain Facteau advised him to start the Hearing over. *Id.* at ¶ 6-63. Plaintiff objected claiming that Defendant Facteau had no authority to order or advise Frederick to begin a new hearing, but Defendant Frederick started the Hearing over anyway. *Id.* at ¶¶ 6-64 through 6-66. At that point, Defendant Frederick noted that a copy of Appendix C had not been provided to Plaintiff with his Misbehavior Report and was not in the Hearing package; he adjourned the Hearing, retrieved a copy of the Appendix and, after giving Plaintiff approximately twenty-one minutes to review the Appendix, reconvened the Hearing and reviewed the Appendix on the record. *Id.* at ¶¶ 6-67 through 6-71. Plaintiff once again pled not guilty to the charge of drug use. The Hearing Officer reused Defendant Nichols's testimony from the prior Hearing and allowed Plaintiff to restate some of his previous objections. *Id.* at ¶¶ 6-72 through 6-74.

Plaintiff again requested that a witness from the SYVA Company be called and questioned as to whether they manufactured the Viva-Jr. drug testing system, had vouched for its reliability, had certified Defendant Nichols, and if they certify the equipment of other companies. *Id*. at ¶ 6-76. Defendant Frederick refused to call such a witness on the grounds that such testimony "would only show or confirm that another company makes the Viva-Jr analyzer and would not show that the machine was not reliable." *Id.* at ¶ 6-77. Defendant Frederick refused to write or issue a written statement as to his reason for refusing to call this witness. *Id.* at ¶¶ 6-78 & 6-79.

The Hearing concluded on May 25, 2010, and Plaintiff was found guilty of drug use and assessed a penalty of five months in special housing unit ("SHU") confinement, with one month deferred for seven months. *Id.* at ¶¶ 6-92 & 6-93. "The statement of Evidence relied on clearly

states the misbehavior report and testimony given by CO R. NICHOLS and inmate Scott's testimony. 'Reliability of testing done was main reason for finding of guilt. There was no proof offered regarding human or mechanical error.'" *Id.* at ¶ 6-83.

On May 26, 2010, Plaintiff wrote to Superintendent Thomas LaValley[3] "complaining about the illegal rehearing, particularly asking whether or not he authorized defendant FACTEAU to direct defendant FREDERICK to commence a <u>new</u> hearing." *Id.* at ¶ 6-95 (emphasis in original). On June 2, Defendant Facteau responded to Plaintiff's letter, informing him that "'I advised SCC Frederick to <u>re-record</u> the <u>parts</u> of your Tier III hearing which was [sic] recorded over. This direction was proper.'" *Id.* at ¶ 6-96.

Plaintiff's cell location was changed to a "lockdown block," cell D-3-8, where each gallery is sealed off and recreation occurs in small single-man cages for one-hour a day. *Id.* at ¶ 6-98.[4] "D-3-8 was a filthy cell . . . the sink and toilet [were] filthy and covered in black dirty stuff; the walls in the cell were covered in heavy phlegm/mucus (from someone's nose); the cell smelled badly and made your skin crawl[]." *Id.* at ¶ 6-99.

On June 10, 2010, Plaintiff was packed up for a transfer to Upstate Correctional Facility ("UCF"), which is composed entirely of SHU units, to finish out his SHU sentence. *Id.* at ¶ 6-102. Plaintiff arrived at UCF on June 11, 2010. *Id.* at ¶ 6-103. Upon arrival, Plaintiff's property was placed in storage, but later confiscated after he had a verbal altercation with an officer. *Id*. at ¶¶ 6-105 through 6-107. Also, his legal mail was read, over his objection and mental health interviews were conducted within earshot of other inmates. *Id*. at ¶¶ 6-108 through 6-110. Plaintiff complained

---

[3] Superintendent Thomas LaValley was dismissed as a Defendant from this action. *See* Dkt. No. 4, Dec. & Order, dated July 18, 2013.

[4] It is unclear when Plaintiff's cell assignment was changed to D-3-8.

about being deprived writing materials so as to appeal his Disciplinary Hearing as well as the deprivation of "adequate soap to wash himself with and to wash his clothing with." *Id.* at ¶¶ 6-111 & 6-113.

On June 18, 2010, Plaintiff filed an administrative appeal of his Disciplinary Hearing with Defendant Prack. *Id.* at ¶ 6-112. On July 22, 2010, Defendant Prack affirmed Defendant Nichols's Hearing determination. That same date, the "Disciplinary Review Committee (DRC) at Upstate granted plaintiff a three-week time-cut 'based on [his] positive adjustment' and recalculated his SHU release date to August 17, 2010. *Id.* at ¶ 6-115. Plaintiff was released from SHU on August 23, 2010. *Id.*

On March 11, 2011, Plaintiff initiated an Article 78 proceeding in State court challenging the May 25, 2010 disciplinary determination. *Id.* at ¶ 6-116. "On March 30, 2012, the defendant's[5] [sic] administratively reversed the Hearing determination, on the advise [sic] of the NYS Attorney General's Office and expunged the May 25, 2010 determination." *Id.* at ¶ 6-117. Thereafter, on July 5, 2010, the Appellate Division dismissed Plaintiff's Article 78 petition as moot.

## B. Plaintiff's Claims

Plaintiff alleges that as a result of his May 2010 Disciplinary Hearing he was confined in keeplock and/or SHU for 109 days. During this confinement, Plaintiff alleges that he was subjected to filthy and unhygienic conditions, including a dirty smelly cell at CCF, and while at UCF was deprived of his property, had his privacy invaded, and was denied adequate soap for washing himself and his clothing. He further expounds upon the isolating and restrictive conditions he endured during his time at UCF. Plaintiff asserts that in connection with his Disciplinary Hearing his due

---

[5] It is unclear which Defendant reversed the disposition.

process rights were violated by the Defendants. Specifically, he claims that Defendant Aiken failed to provide adequate assistance by failing to provide him with all the documents he requested prior to his Disciplinary Hearing and also violated his confidentiality when instead of giving documents directly to him, she provided his list of requested documents to the Hearing Officer. Plaintiff claims that Defendant Frederick violated his due process rights during the course of his Disciplinary Hearing when he prejudged his guilt, acted as both assistant and hearing officer, failed to obtain and consider documents requested by Plaintiff, questioned a witness off-the-record and outside of Plaintiff's presence, prevented Plaintiff from fully interrogating certain witnesses as well as refused to call certain witnesses on Plaintiff's behalf, failed to properly record the entire Hearing, and restarted the Hearing without providing adequate notice. Plaintiff further contends that Defendant Nichols testified falsely and that Defendant Facteau improperly authorized Defendant Frederick to restart Plaintiff's Hearing. Lastly, Plaintiff contends that Defendant Prack improperly affirmed Defendant Frederick's disciplinary determination.

## C. Due Process

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id.* With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than

the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. 472, 478 (1995).

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted). Nevertheless, the Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed

*-12-*

record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215, F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Edmonson v. Coughlin*, 1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life"); *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative sentences of 125-288 days are "relatively long" and therefore necessitate "specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant"). Accordingly, the court must "make a fact-intensive inquiry" that would examine the actual conditions of confinement within SHU. *Palmer v. Richards*, 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d at 65. If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under *Sandin*. *Id.*

Once a prisoner makes a threshold showing of atypical and significant confinement, the court should determine whether that prisoner, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A prisoner placed in

*-13-*

disciplinary segregation must be provided (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) written statement as to the evidence relied upon and the reasons for the disciplinary action. *Id.* at 564-66; *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (quoting *Hewitt v. Helms*, 459 U.S. at 476). Additionally, inmates are entitled to be judged by a fair and impartial hearing officer and the disciplinary conviction should be supported by some evidence. *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (some evidence to support conviction) & *McCann v. Coughlin*, 698 F.2d 112, 121-22 (2d Cir. 1983) (fair and impartial hearing officer)).

## 1. Liberty Interest

As noted above, Plaintiff alleges that as a result of his Disciplinary Hearing he was confined in keeplock/SHU for approximately 109 days, during which time he was subjected to filthy and unhygienic conditions and was deprived of adequate soap and other property. In light of the Second Circuit's requirement that we make detailed factual findings of the conditions endured by Plaintiff, and in light of the record before us, we find that for purposes of the pending Motion, Plaintiff sufficiently alleges that he had a protected liberty interest in remaining free from the atypical and significant hardships he endured during his segregated disciplinary confinement. *See Samms v. Fischer*, 2013 WL 5310215, at *7 (N.D.N.Y. Sept. 20, 2013) (noting that "[i]t is possible that 60 days in an unsanitary cell in SHU could . . . constitute an atypical and significant hardship in relation to the ordinary incidents of prison life sufficient to convey on a prisoner a protected liberty interest under the due process clause") (citations omitted); *see also Palmer v. Richards*, 364 F.3d at 65-66

(surveying cases in support of the proposition that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent SHU was exceedingly short — less than the 30 days that the *Sandin* plaintiff spent in SHU — and there was no indication that the plaintiff endured unusual SHU conditions.") (citations omitted); *Gonzalez-Cifuentes v. Torres*, 2007 WL 499620, at *3 (N.D.N.Y. Feb. 13, 2007) (finding that for the purposes of a motion to dismiss, plaintiff's allegation that he spent ninety days in keeplock was sufficient to require the court to engage in detailed fact finding before dismissing his claim). Accepting the Complaint as true, Plaintiff has adequately pled a liberty interest, however, we reach no conclusion as to whether or not these claims will be sufficient to withstand a properly filed motion for summary judgment after the development of a more detailed factual record.

Accordingly, we must now determine whether Plaintiff has plausibly alleged that any of the Defendants deprived him of one or more of the minimum requirements of due process to which he was entitled.

### 2. Defendant Aiken

Plaintiff alleges that Defendant Aiken provided constitutionally inadequate pre-hearing assistance because, *inter alia*, (1) she violated his duty to maintain inmate-employee-assistant confidentiality when she provided Defendant Frederick with a copy of the list of documents he had requested, and (2) she failed to provide Plaintiff with all of the documents he requested before the Hearing. *See* Compl. at ¶¶ 6-11 through 6-18, 6-21 through 6-24, 6-27 through 6-29, 7-2, & 7-4.

Plaintiff's claim that Defendant Aiken violated his purported right to inmate-employee-assistant confidentiality is completely meritless. While Plaintiff may have been entitled to pre-hearing assistance, he is not entitled to any sort of confidentiality by virtue of that arrangement.

*Accord Loving v. Selsky*, 2009 WL 87452 at *2 (W.D.N.Y. 2009) (citing *Silva v. Casey,* 992 F.2d 20, 22 (2d. Cir. 1993), for the proposition that the duty to provide pre-hearing assistance "falls far short of the right to counsel that the Sixth Amendment guarantees to criminal defendants.'"); *see also Jackson v. Johnson,* 30 F. Supp. 2d 613, 619 (S.D.N.Y. 1998) ("An assistant's role is to act as 'merely a surrogate for the inmate, not a legal adviser or advocate.").

Plaintiff also contends that Defendant Aiken provided constitutionally deficient assistance to him when she failed to provide him with all the requested documents. The Court acknowledges that Plaintiff had a right to receive some assistance prior to his Hearing, particularly in light of the fact that he was confined to keeplock status before the Hearing. *Eng v. Coughlin,* 858 F.2d 889, 897 (2d Cir. 1988) ("Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges."). Indeed, this duty is of particular importance when, as here, the prisoner is in segregative confinement prior to the disciplinary hearing. *Id.* ("When the inmate is disabled, either by being confined full-time to SHU or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced."); *Loving v. Selsky*, 2009 WL 87452, at *1 ("In particular, an inmate must be provided some assistance when circumstances hamper the inmate's ability to prepare a defense, such as when the inmate is confined to SHU prior to the hearing."); *see also Hernandez v. Selsky,* 572 F. Supp. 2d 446, 453 (S.D.N.Y. 2008) ("The obligation to provide assistance is greater as the inmates' ability to prepare a defense is reduced."); *Louis v. Ricks*, 2002 WL 31051633, *10 (S.D.N.Y. Sept. 13, 2002) (holding that inmates in keeplock confinement are entitled to pre-hearing assistance).

"While the assigned assistant's precise role is not defined, it certainly should include

gathering evidence, obtaining documents, and relevant papers, and interviewing witnesses." *Pilgrim v. Luther*, 2005 WL 6424703, at *8 (S.D.N.Y. Sept. 12, 2005). Plaintiff's right to assistance, however, does not translate to a wholesale right to receive all of the documentary evidence requested. *Eng v. Coughlin*, 858 F.2d at 898 (noting that assistance "must be provided in good faith and in the best interests of the inmate" and finding that the employee-assistant who was requested to interview an onerous amount of witnesses "must attempt to determine independently who the most relevant witnesses might be and to interview them"); *Shepard v. Coughlin*, 1993 WL 77385, at *5 (S.D.N.Y. Mar. 16, 1993). Plaintiff has not alleged that Defendant Aiken failed to provide him with any assistance; indeed, Plaintiff acknowledges that Defendant Aiken provided him with some of the documents he requested prior to the Hearing and included others in Plaintiff's Hearing packet. Accordingly, Plaintiff has failed to state a Due Process claim against Defendant Aiken. Nonetheless, even if Defendant Aiken erred by not producing all of the documents requested and by divulging the list of documents to the Hearing Officer, we find that she is entitled to qualified immunity.

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). Qualified immunity provides government officials "immunity from suit, rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987);

*Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999).

Qualified immunity is an affirmative defense that must be pled by the official claiming it. *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (citing *Harlow v. Fitzgerald*, 457 U.S. at 815). The only pleading filed in the present case thus far is the Complaint. Defendants have not raised this affirmative defense in a responsive pleading, as set forth in Federal Rule of Civil Procedure 8(c), but rather in their Memorandum of Law in support of the Motion to Dismiss. Dkt. No. 15-1. Generally, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green*). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; in such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*, 722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 435.

Based upon the allegations of the Complaint, the Court finds that Defendant Aiken is entitled to qualified immunity because neither of the rights asserted by Plaintiff are clearly established and no reasonable person in Aiken's position would have believed that they were acting in such a way that violated Plaintiff's rights. To determine whether a right was clearly established for purposes of qualified immunity, courts must consider "whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the [Second Circuit] supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his [or her] actions were unlawful." *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *see also Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088, 2093 (2012) ("To be clearly

*-18-*

established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." (citations, modifications, and internal quotation marks omitted)); *Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir. 1999).

The Court is unable to find any Supreme Court or Second Circuit precedents clearly establishing that Defendant Aiken either owed a duty of confidentiality to Plaintiff or was required to provide Plaintiff with every document he requested. While attorney-client communications are protected by a privilege of confidentiality, it is clear that Plaintiff was not entitled to assistance from an attorney in order to help prepare a defense to the charges pending against him and that Defendant Aiken was not acting in such capacity. *Silva v. Casey,* 992 F.2d at 22 ("The assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a prisoner is not entitled."). Furthermore, the applicable State regulations that establish a New York State inmate's right to employee assistance do not extend a cloak of confidentiality to any discussion between the assistant and inmate, nor do the applicable rules place an obligation on the assistant to procure every item requested by an inmate. *See, e.g.,* N.Y. COMP. CODES R. & REGS. tit. 7, § 251-4.2.[6] Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's claims against Defendant Aiken because we find that no due process violation occurred by her actions and because

---

[6] The full text of the relevant Regulations states as follows:
The assistant's role is to speak with the inmate charged, to explain the charges to the inmate, interview witnesses and to report the results of his efforts to the inmate. He **may** assist the inmate in obtaining documentary evidence or written statements which may be necessary. The assistant may be required by the hearing officer to be present at the disciplinary or superintendent's hearing.
N.Y. COMP. CODES R. & REGS. tit. 7, § 251-4.2 (emphasis added).

*-19-*

she would nevertheless be entitled to qualified immunity.[7]  Defendant Aiken should accordingly be

**DISMISSED** from this action.

### 3. Defendant Nichols

Plaintiff alleges, *inter alia*,[8] that Defendant Nichols intentionally testified falsely "that SYVA

was the manufacturer of the Viva-Jr analyzer[.]"  Compl. at ¶ 7-18.  However, the presentation of

false testimony does not deprive an inmate of the minimum requirements of due process.  *See*

*Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (citing *Mitchell v. Senkowski,* 158 F.

App'x 346, 349 (2d Cir. 2005) for the proposition that a prison inmate has no constitutionally

guaranteed immunity from being falsely or wrongly accused of conduct which may result in the

deprivation of a protected liberty interest "extends as well to false testimony by corrections

personnel at prison disciplinary hearings").  Plaintiff does not assert that Defendant Nichols testified

falsely in retaliation for the exercise of some constitutional right, and in liberally construing

Plaintiff's Complaint, the Court finds that no other plausible claim is stated against Defendant

Nichols based upon his role in testing Plaintiff's urine and authoring the Misbehavior Report.

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to

---

[7] Alternatively, given that Defendant Frederick considered each of Plaintiff's requests and ultimately determined that many of the documents Plaintiff requested from Defendant Aiken were irrelevant, Defendant Aiken's failure to provide Plaintiff with those documents should be dismissed as harmless error.  *See Louis v. Ricks*, 2002 WL 31051633, at *15 (S.D.N.Y. Sept. 13, 2002) (applying harmless error to plaintiff's claim that his right to due process was violated where he was provided with inadequate assistance prior to his prison disciplinary hearing).

[8] In his Complaint, Plaintiff attributes due process violations to Defendant Nichols based upon the actions of other Defendants.  For example, Plaintiff claims that Defendant Nichols violated Plaintiff's due process rights by denying him constitutionally adequate pre-hearing assistance and for preventing him from introducing certain documents during the Hearing.  Compl. at ¶¶ 7-6 & 7-8.  Plaintiff does not, however, assert that Defendant Nichols had a position of authority over any of the other Defendants.  And, aside from alleging that Nichols testified falsely, Plaintiff fails to allege any facts from which it would be plausible to infer that Defendant Nichols was somehow personally involved in any other constitutional wrongdoing.  *See generally* Compl. We therefore only consider those allegations of due process violations for which Plaintiff provides allegations of fact attributing Defendant Nichols's personal involvement.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983").

Plaintiff's claim against Defendant Nichols and that Defendant Nichols be **DISMISSED** from this action.

### 4. Defendant Frederick

Plaintiff alleges that during the course of his Disciplinary Hearing and Re-hearing, Defendant Frederick violated his due process rights in a variety of ways. Specifically, Plaintiff alleges, *inter alia*,[9] that Defendant Frederick (1) took off-the-record testimony from an unidentified witness, Compl. at ¶¶ 6-31 through 6-34; (2) failed to record the entire Hearing, *id.* at ¶¶ 6-57, 6-59, 6-60, & 6-75; (3) illegally re-started the Hearing, , *id.* at ¶¶ 6-61, 6-63, 6-64, & 6-66; (4) failed to provide him with twenty-four hours notice of the Rehearing; (5) was biased, in that he had predetermined Plaintiff's guilt, *id.* at ¶¶ 6-86 & 6-87; and, (6) refused to provide certain documents, interrupted his attempts to question Officer Nichols, and refused to call a witness from the SYVA Company to testify as to the reliability and accuracy of the urinalysis tests conducted by Defendant Nichols, *id.* at ¶¶ 6-71, & 6-76 through 6-79.

As noted above, pursuant to *Wolff*, Plaintiff is entitled to minimum due process protections including (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) written statement as to the evidence relied upon and the reasons for the disciplinary action.[10] *Wolff v. McDonnell*, 418 U.S. at 564-66. Additionally, Plaintiff was entitled

---

[9] As with his allegations against Defendant Nichols, Plaintiff attributes wrongdoing to Defendant Frederick without alleging concomitant factual allegations supporting Defendant Frederick's personal involvement. For example, Plaintiff accuses Defendant Frederick violated his constitutional rights when Defendant Aiken failed to provide adequate pre-hearing assistance. Compl. at ¶ 7-2. We only consider here, as we must, those claims against Defendant Frederick that are supported by factual allegations regarding his personal involvement in alleged wrongdoing.

[10] It does not appear that any of Plaintiff's factual allegations regarding purported due process violations fall within this category, therefore, we do not discuss this constitutional protection. In any event, it is uncontested that
(continued...)

to be judged by a fair and impartial hearing officer and his disciplinary conviction should be supported by some evidence. *Kalwasinski v. Morse*, 201 F.3d at 108. We consider each of Plaintiff's contentions within the framework of those constitutional protections to which he was entitled.

### a. Notice

"Notice" should be something more than a mere formality. *Benitez v. Wolff*, 985 F.2d 662, 665 (2d Cir. 1993). "The effect of the notice should be to compel 'the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged' to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." *Taylor v. Rodriguez*, 238 F.3d at 192-93 (quoting *McKinnon v. Patterson*, 568 F.2d 930, 940 n.11 (2d Cir. 1977)) (alteration in original).

Plaintiff's claim that Defendant Frederick failed to give him adequate notice of the Re-hearing falls short of stating a due process claim. In liberally construing Plaintiff's Complaint, it appears that once the decision was made to restart the Hearing, Plaintiff believed he was entitled to have the entire process begin anew, including the notion that he be provided with notice of the charges against him twenty-four hours in advance of the hearing. To be clear, Plaintiff does not accuse the Defendants of failing to give proper notice of the charges against him prior to the commencement of the initial Hearing. Instead, he imposes an extra notice requirement on the Defendants at the point in the Hearing when Defendant Frederick determined that he needed to start the Hearing anew. Based upon the allegations in the Complaint, it is clear that Plaintiff received a

---

[10](...continued)
Plaintiff received a written disposition from Defendant Frederick explaining the reasons for his disciplinary determination. Compl. at ¶ 6-83.

copy of the Misbehavior Report at 8:30 a.m. on May 8, 2010, and that his Disciplinary Hearing initially began on May 13, 2010. Compl. at ¶¶ 6-7 & 6-19. Thus, it is clear that Plaintiff received constitutionally adequate notice well in advance of the twenty-four hour minimum. *See Sira v. Morton*, 380 F.3d 57, 70 (2d Cir. 2004) (citing, *inter alia*, *Wolff v. McDonnell,* 418 U.S. at 564, for the proposition that "[d]ue process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing"). Plaintiff does not challenge the sufficiency of that notice, and, indeed, his specific attempts to gather evidence and mount a defense belie any notion that the content of the initial notice failed to adequately apprise him of the charges against him and the factual basis for such charges. This Court finds no basis for Plaintiff's claim that upon restarting the Hearing, Defendant Frederick was constitutionally compelled to provide identical notice of which Plaintiff already received. Accordingly, we find that Plaintiff was provided with proper notice and has failed to state a due process violation.

### b. Opportunity to Present a Defense

With regard to the second *Wolff* factor, a prisoner is entitled to an opportunity to present his defense by calling witnesses and presenting evidence. *See Wolff v. McDonnell,* 418 U.S. at 566 ("[A]n inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense[.]"). In the case at bar, Plaintiff asserts several violations of his right to call witnesses and present rebuttal evidence. Specifically, Plaintiff alleges that Defendant Frederick refused his request to call a witness from the SYVA Company to testify as to the reliability of the EMIT-Jr. machine, failed to provide written reasons for his denial of certain witnesses, refused to provide him with copies of documents without explanation, improperly denied

requests for documents on grounds of relevancy, interfered with his ability to question Defendant

Nichols regarding his ability to properly test Plaintiff's urine sample by denying or rephrasing his

questions, and took testimony from an unidentified officer off-the-record and outside the presence

of Plaintiff. Such claims, as pled, are sufficient at this early stage to plausibly state a due process

violation claim against Defendant Frederick. *See Kearney v. Goord*, 2011 WL 1260076, at *7

(W.D.N.Y. Mar. 4, 2011) ("Plaintiff's allegation that C.H.O. Schoelkoff denied him due process by

refusing to call witnesses requested by plaintiff, by refusing to ask witnesses questions proffered by

plaintiff and denying plaintiff access to documents, resulting in four months SHU confinement, is

sufficient to state a cause of action."); *Collins v. Ferguson*, 804 F. Supp. 2d 134, 139 (W.D.N.Y.

2011) (finding plaintiff had stated a due process violation where he alleged that "Ferguson refused

to provide plaintiff with documents relating to the testing of plaintiff's urine sample, that he refused

to ask witnesses certain 'vital' questions that had been requested by plaintiff, that he 'continually

rephrased questions' to the officer witnesses in a way that was designed to elicit answers that were

detrimental to plaintiff's defense, and that he accepted the officers' testimony at face value, without

any corroborating documentary support"). And because Plaintiff's right to present a defense is

clearly established, at this juncture, we cannot state that Defendant Frederick is entitled to qualified

immunity. Thus, we recommend that Defendants' Motion be **denied** as to these claims for due

process violations against Defendant Frederick.

### c. Hearing Officer Bias

Plaintiff asserts that Defendant Frederick prejudged his guilt and conducted the Hearing in

a biased fashion. While an inmate is *not* entitled to a hearing officer with the same level of

impartiality required by judges, he is entitled to a hearing untainted by arbitrary or pre-determined

findings of guilt. *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989). Nonetheless, a hearing officer's limited impartiality requirements are satisfied where the record contains "some evidence" to support the officer's findings. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached." *Id.* at 455-56 (citations omitted). That being said, only "'reliable' evidence can constitute 'some evidence.'" *Sira v. Morton*, 380 F.3d at 76 (citing *Luna v. Pico,* 356 F.3d 481, 488 (2d. Cir. 2004)).

The Court is mindful that according to the Complaint, Defendant Frederick's Statement of Evidence relied upon referenced the drug tests conducted by Defendant Nichols and that results of such tests may satisfy the requirement of "some evidence." *Scott v. Nichols*, 2013 WL 2237840, at *10 (N.D.N.Y. May 21, 2013) (surveying cases for the proposition that drug test results are more than sufficient to meet the "some evidence" standard). However, at this early stage, in light of the Court's obligation to liberally construe Plaintiff's Complaint to raise the strongest claim suggested therein, especially considering Plaintiff's adamant challenge to the reliability of the test, and based upon the above recommendations regarding Defendant Frederick's alleged interference with Plaintiff's ability to mount a legitimate defense as it pertains to Plaintiff's attempts to contest the validity of the tests, the Court finds that Plaintiff has nudged his claim alleging hearing officer bias into the plausible realm and should be permitted to proceed. Thus, the Court recommends **denying** Defendants' Motion as it pertains to Plaintiff's allegations regarding Defendant Frederick's bias. As with the prior analysis, the Court finds it inappropriate to assess at this juncture whether Defendant Frederick would be entitled to qualified immunity as to Plaintiff's claims of bias.

<u>d.  Other Due Process Allegations</u>

Plaintiff alleges that Defendant Frederick violated his due process rights when he failed to record the entire Hearing improperly restarted the Hearing.  Neither of these allegations rise to the level of a due process protection.

First, Defendant Frederick's failure to record the entire Hearing did not deprive Plaintiff of any minimum requirements of due process.  *See Ramsey v. Goord*, 661 F. Supp. 2d 370, 393 (W.D.N.Y. 2009) (failure to record a portion of Plaintiff's disciplinary hearing did not rise to a due process violation).  Indeed, "the *only* process due an inmate is that minimal process guaranteed by the Constitution as outlined in *Wolff*."  *Ramsey v. Goord*, 661 F. Supp. 2d 370, 393 (W.D.N.Y. 2009) (quoting *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004)).  "Significantly, *Wolff* did not include electronic recording of a disciplinary hearing among the due process requirements."  *Id.*; *see also Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (cited in *Ramsey* for the proposition that New York State's regulation requiring that a disciplinary hearing be recorded does not impute a federal constitutional protection).

Second, Plaintiff's argument that Defendant Frederick lacked authority/jurisdiction to restart his Hearing purportedly in violation of state regulations, does not allege a cognizable due process violation.  *See A'Gard v. Perez*, 919 F. Supp. 2d 394, 403 (S.D.N.Y. 2013) (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir.1990), for the proposition that "[a]ny alleged violations of prison directives or regulations do not give rise to a federal claim, because federal constitutional standards rather than state law define the requirements of procedural due process.") (internal alterations and quotation marks omitted); *Johnson v. Goord*, 487 F. Supp. 2d 377, 400 (S.D.N.Y. 2007) (quoting *Rivera v. Wohlrab,* 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) for the proposition

that "a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law").

As such, we recommend **granting** Defendants' Motion as it pertains to purported due process violations stemming from Defendant Frederick's failure to record the entire Hearing and restarting the Hearing.

### 5. Defendant Facteau

Plaintiff alleges that Defendant Facteau lacked authority to order or advise Defendant Frederick to restart the Hearing. Compl. at ¶¶ 6-61 through 6-64, 6-95, 6-96, 7-22, & 7-23. Plaintiff also claims that Defendant Facteau was aware of, yet failed to remedy, the fact that Plaintiff did not receive twenty-four hours notice of the disciplinary rehearing. *Id.* at ¶¶ 7-10 & 7-11. Plaintiff's theories of liability against Defendant Facteau are diametrically opposed. On the one hand, he appears to question Defendant Facteau's authority to authorize a rehearing, while at the same time, he criticizes Defendant Facteau's failure to remedy purported due process violations committed by Defendant Frederick. Based upon the factual allegations of the Complaint, it appears, to some extent, that Plaintiff seeks to hold Defendant Facteau liable based upon a theory of supervisory liability.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff

must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

As noted above, no due process violation occurred when Defendant Frederick restarted Plaintiff's Hearing, thus, Plaintiff cannot maintain an action against Defendant Facteau based on the fact that he authorized or advised Defendant Frederick to re-record the Disciplinary Hearing or for his failure to remedy that alleged violation. *See Wesolowski v. Harvey*, 784 F. Supp. 2d 231, 234 (W.D.N.Y. 2011) (citing *Campo v. Keane,* 913 F. Supp. 814, 826 (S.D.N.Y.1996), for the proposition that "plaintiff cannot state a claim [against a supervisory official] for personal involvement in a constitutional violation, where no underlying constitutional violation occurred").

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's claims against Defendant Facteau and that Defendant Facteau be **DISMISSED** from this

action.

### 6. Defendant Prack

Aside from a slew of wholly conclusory allegations in his wherefore clause, Plaintiff's sole allegation against Defendant Prack is that he affirmed Defendant Frederick's disciplinary determination. Compl. at ¶ 6-114. Courts within the Second Circuit are split over whether such an allegation is sufficient to establish personal liability for supervisory officials. We subscribe to the affirmance-plus standard, which holds that the mere rubber-stamping of a disciplinary determination is insufficient to plausibly allege personal involvement. *See Brown v. Brun*, 2010 WL 5072125, at *2 (W.D.N.Y. Dec. 7, 2010) (noting that courts within the Second Circuit are split with regard to whether the act of affirming a disciplinary hearing is sufficient to allege personal involvement of a supervisory official, and concluding that the distinction appears to hinge upon whether the official proactively participated in reviewing the administrative appeal or merely rubber-stamped the results). Here, Plaintiff fails to allege a single fact from which it could plausibly be inferred that Defendant Prack did anything other than rubber-stamp his disciplinary determination. *See generally* Compl. Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Defendant Prack and that he be **DISMISSED** from this action. **However**, the Second Circuit has cautioned courts in this District from dismissing *pro se* complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se*] complaint gives any indication that a valid claim might be stated.").

Therefore, in light of the Second Circuit's directive and the fact that some of Plaintiff's other claims are proceeding, we recommend that Plaintiff be **GRANTED LEAVE TO AMEND** his Complaint in order to further specify, how, if at all, Defendant Prack proactively participated in reviewing Plaintiff's administrative appeal.

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 15) be **GRANTED** in part and **DENIED** in part as follows:

1.  **GRANTED** as to Plaintiff's claims against Defendants Aiken, Facteau, and Nichols and each of these Defendants should be **DISMISSED** from this action;

2.  **GRANTED without prejudice** as to Plaintiff's claim against Defendant Prack, with the caveat that Plaintiff be granted leave to amend his Complaint in accordance with the above;

3.  **GRANTED** with respect to Plaintiff's claims that Defendant Frederick violated his due process rights by failing to provide sufficient notice of the Re-hearing, failing to record the entire Hearing, and improperly re-starting the Hearing; and

4.  **DENIED** with respect to Plaintiff's claims that Defendant Frederick denied him the opportunity to present a defense and for being biased; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   August 28, 2014
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge